Mr. Lee White Executive Director Department of Administration 1525 Sherman Street, 7th Floor Denver, Colorado 80203
Dear Mr. White:
In your October 16, 1979 letter you requested opinions relating to contemplated building purchases in Alamosa and Grand Junction by the Department of Labor and Employment and the Department of Agriculture, respectively.
QUESTIONS PRESENTED AND CONCLUSIONS
The questions posed are restated here and will be addressed in turn:
1. Is such purchase authorized by the statutes? While Colorado Revised Statute 24-82-102 authorizes real property to be purchased by the Office of State Planning and Budgeting with the approval of the Governor, does this mean that the legislature need not approve such a transaction?
 My conclusion is that no legislative approval is required if the funds for the purpose are donated, otherwise the legislature must appropriate the funds.
2. If legislative approval is required, does the authorization for funding in the Long bill to acquire a building constitute legislative approval?
 My conclusion is "yes." A Long bill appropriation would satisfy the statutory requirements.
3. If the property is to be purchased 100% with federal funding, does the legislature have to approve it by specific legislation or by inclusion in the Long bill?
My conclusion is "no."
4. Did S.B. 306, enacted during the last session, transfer the authority of the statute "above" (C.R.S. 1973, 24-82-102(1)) to the Department of Administration, or does it remain with OSPB?
 It is my conclusion that S.B. 306 transferred to the Department of Administration all powers and responsibility formerly vested in OSPB.
5. If the property is purchased, is the Department of Administration responsible for the property and the assignment of space within the property, or does such responsibility lie with the agency for whom the building was acquired?
 It is my conclusion that the primary responsibility in this case for the property and the assignment of space within that property is that of the agency for whom the building was acquired.
ANALYSIS
C.R.S. 1973, 24-82-102(1) (Supp. 1978) provides:
 (1) On behalf of the state of Colorado and with the approval of the governor, the executive director of the office of state planning and budgeting is authorized to acquire fee simple title, or any lesser interest therein, to any real property for present or future use by the state. Title to such property may be acquired by purchase, donation, or the exercise of the power of eminent domain through condemnation proceedings in accordance with law from funds appropriated by the general assembly or from funds donated to the state for the purpose.
(Emphasis added.)
Therefore the purchases you describe are authorized by the statute, provided funding is available either from appropriations or donations. If the funds for the purpose are donated, then the legislature need not specifically approve the transaction, the approval being presumed by the authority granted in C.R.S. 1973,24-82-102(1) (Supp. 1978). Otherwise, the legislature must appropriate the funds to accomplish the purchase.
An appropriation in the Long bill for acquiring a building constitutes sufficient legislative approval to meet the requisites of C.R.S. 1973, 24-82-102(1) (Supp. 1978), which only requires an act of appropriation, given the approval authority already provided in the statute. Therefore a Long Bill appropriation would satisfy the statutory requirement.
Assuming the federal funds are given the state for a purpose which would include a land purchase, there is no general assembly approval required. Moreover, the general assembly cannot appropriate federal funds under MacManus v. Love,179 Colo. 218, 499 P.2d 609 (1972). Therefore, when 100% federal funding is involved, C.R.S. 1973, 24-82-102(1) (Supp. 1978) is satisfied, and no legislative approval is required.
S.B. 306 pointedly ignored C.R.S. 1973, 24-82-102(1), (Supp. 1978), and while this disregard is difficult to explain, from its other consequences, it appears the failure to amend C.R.S. 1973,24-82-102(1) was clearly an oversight, and was not so intended. This belief has been confirmed by the legislative drafting office, by a review of the tapes of the Senate State Affairs Committee, and by the presentation made by Senator Fred Anderson, the bill's senate sponsor. It is clear that the intent of the general assembly was to transfer all of the responsibilities for state buildings and on-line capital construction back to the Department of Administration. The legislative drafting office has advised our office that it is seriously considering a conforming amendment in the next revisor's bill.
While legislative housekeeping is awaited, C.R.S. 1973, 24-82-101(1) remains law. However, to give full effect to the language in S.B. 306, and thus to give effect to the intent of the legislature, S.B. 306 can be construed as having transferred to Administration the authority to acquire interests in real property.
S.B. 306 transferred to the Department of Administration all powers and responsibilities formerly vested in OSPB relating to state lands in subsections C.R.S. 1973, 24-82-101, 103(1) and (2), and 106, as well as those in C.R.S. 1973, 24-82-202, relating to easements in state lands.
In addition, the saving clause of C.R.S. 1973, 24-30-1301 etseq. (24-30-1302(3)), which pertains to the transfer of these powers, duties and functions of OSPB to the Department of Administration, while specifically limiting its applicability to those powers, duties and functions "vested by this part 13 (24-30-1301 et seq.)" does provide: "Whenever the powers, duties, or functions vested by this part 13 are referred to in any other statute or in any contract or other document and designate the former division of public works, or its predecessor, or the office ofstate planning and budgeting, such designation shall bedeemed to apply solely to the department ofadministration." (Emphasis added.)
S.B. 306, by referring to section 24-82-102(2) in C.R.S. 1973,24-30-1303(1)(a) where it states:
(1) The department (of administration) shall:
 (a) With the approval of the governor . . . and, as provided in section 24-82-102(2), negotiate and execute leases of state-owned property not presently needed for state use;
(emphasis added) thereby intends that 24-82-102(2) apply to the department of administration solely, and not to the office of state planning and budgeting as a reading of C.R.S. 1973,24-82-102(1) and (2) would require. / C.R.S. 1973, 24-82-102(1) provides ". . . the executive director of the office of state planning and budgeting is authorized . . . ."; C.R.S. 1973, 24-82-102(2) states "said executive director . . . may . . . ." / In order for the executive director referenced in C.R.S. 1973,24-82-102(2) to be the executive director of the department of administration, as required by C.R.S. 1973, 24-30-1303(1)(a) and C.R.S. 1973, 24-30-1302(3), the executive director referred to in C.R.S. 1973, 24-82-102(1) must be the executive director of the department of administration. Clearly the intention was to vest the powers, duties and functions, as well as all authority relative to state lands and property in one state department (with those few exceptions where the authority has remained with other state agencies or departments for particular lands and property, such as the State Board of Land Commissioner, or the Division of Wildlife, or the Division of Parks and Outdoor Recreation.) The legislature did not intend to isolate only one of the functions and duties and continue to delegate that sole function to a department which would then have no other logical relationship, and with no responsibility for any other state lands and property.
S.B. No. 306 amended C.R.S. 1973, 24-82-101 and in so doing transferred ". . . control of the Capitol and Colorado State Museum Building and grounds and any otherproperty the state may acquire adjacent
thereto . . . ." (emphasis added) to the department of administration. The properties in Alamosa and Grand Junction would obviously not conform to the definition prescribed by the limits ". . . any other property . . . adjacent thereto. . . ." However, pursuant to C.R.S. 1973, 24-30-1303(1), the department does have certain responsibilities in this situation, including supervising expenditure of any capital construction funds and controlled maintenance funds, developing specific standards relating to space and energy conservation, providing technical assistance during construction, reviewing maintenance practices and enforcing standards for the handicapped.
SUMMARY
Therefore, while the Department of Administration may have certain supervising or assistance duties, the primary responsibility for the properties in question, for the space assignment within the properties and for physical and controlled maintenance lies with the agencies for whom they were acquired.
Very truly yours,
 J.D. MacFARLANE Attorney General REAL ESTATE PUBLIC BUILDINGS PUBLIC FUNDS GIFTS FEDERAL GRANTS
C.R.S. 1973, 24-82-102
C.R.S. 1973, 24-30-1301 et seq.
ADMINISTRATION, DEPT. OF State Buildings, Div. of LABOR EMPLOYMENT DEPT. AGRICULTURE, STATE DEPT. PLANNING BUDGETING DEPT.
The Department of Administration may purchase buildings for use by the Departments of Agriculture and Labor and Employment outside the capitol buildings area provided the funds therefore are appropriated (signifying approval by the legislature) or donated (legislative approval not required). Department of Administration is appropriate state agency as 24-30-1301 et seq. requires that provisions in 24-82-102(1) refer to Department of Administration rather than to Office of State Planning and Budgeting.